# Exhibit A

Software Management, Inc.

SUBCONTRACTOR WORK ORDER AGREEMENT between Contractor, Software Management, Inc. (SMI) and Subcontractor, Ripple Effects Interactive, Inc. (REI)

1. **INDEPENDENT CONTRACTORS.** REI and SMI are independent contractors. Neither party is an employee, agent or representative of the other party. Neither party shall have any right, power, or authority to enter into any agreement for or on behalf of the other party, or to incur any obligation or liability or otherwise bind the other party. This Agreement does not create an association, joint venture, or partnership between the parties nor imposes any partnership liability upon either party.

2. **WARRANTIES.** REI warrants that REI has the right to enter into this Agreement and further warrants:

   a. that the service shall be performed in a good and professional manner;

   b. that REI shall at all times comply with SMI or its Client's security provisions and other SMI or Client policies and procedures made known to REI;

   c. that REI shall not violate or infringe upon any SMI or its Clients' rights, including but not limited to property, contract, employment, trade secret, confidential and proprietary information, or any trademark, copyright or patent rights; and

   d. that REI shall not violate any applicable federal, state, or local laws, rules or regulations in the performance of services under this Agreement.

3. **INTELLECTUAL PROPERTY**

   3.1 **Client Proprietary Intellectual Property.** REI acknowledges that as part of performing the Services, REI personnel may have access to or utilize Client or SMI proprietary software, methodologies, tools, specifications, drawings, sketches, models, samples, records, documentation, works of authorship or creative works, ideas, knowledge or data which has been originated or developed by personnel of Client, SMI or its affiliates or by third parties under contract to Client or SMI to develop same, or which has been purchased by, or licensed to, Client (collectively, "Client or SMI Proprietary Intellectual Property") or SMI. REI agrees that Client or SMI Proprietary Intellectual Property is the sole property of Client or SMI (or its licensor) and that Client or SMI (or its licensor) will at all times retain sole and exclusive title to or ownership thereof. Nothing contained in this Agreement or otherwise shall be construed to grant to REI any right, title, license or other interest in, to or under any Client or SMI Proprietary Intellectual Property (whether by estoppel, implication or otherwise), except the right to modify and otherwise use the Client or SMI Proprietary Intellectual Property only in conjunction with the performance of the Services.

   3.2 **Ownership of REI Deliverables and Client Proprietary Intellectual Property.** Subject to the provisions of Sections 3.3 and 3.4 below, REI agrees that the REI Deliverables shall be a work for hire and, upon payment in full, shall become the property of, and ownership thereof shall vest in, Client. REI agrees to take all reasonably necessary actions, which are necessary to assure the conveyance to Client of all right, title and interest in, to and under any REI Deliverables, including copyright. The cost of conveying such rights shall be at Client's expense.

   3.3 **Residual Rights.** Notwithstanding the above, Client and SMI agrees that REI, its affiliates and their respective employees and agents shall be free to use and employ their general skills, know-how, and expertise, and to use, disclose, and employ any generalized ideas, concepts, know-how, methods, techniques or skills gained or learned either before or during the course of any Services performed hereunder, subject to its obligations respecting Client's or SMI's Confidential Information pursuant to Section 5. SMI understands and agrees that REI and its affiliates may perform similar services

for third parties using the same personnel that REI may utilize for rendering the Services for Client hereunder, subject to REI's obligations respecting Client's Confidential Information pursuant to Section 5.

    3.4    **REI Proprietary Intellectual Property.** Client or SMI (or its licensor) acknowledges that as part of performing the Services, REI personnel may utilize REI proprietary authoring scripts, source code, custom utilities and other proprietary software, methodologies, tools, specifications, drawings, sketches, models, samples, records, documentation, works of authorship or creative works, ideas, knowledge or data which has been originated or developed by the personnel of REI or its affiliates or by third parties under contract to REI to develop same, or which has been purchased by, or licensed to, REI (collectively, "REI Proprietary Intellectual Property"). Client or SMI (or its licensor) agrees that REI Proprietary Intellectual Property is the sole property of REI (or its licensor) and that REI (or its licensor) will at all times retain sole and exclusive title to and ownership thereof and is considered Confidential Information of REI as set forth in Section 5, below. Nothing contained in this Agreement or otherwise shall be construed to grant to Client or SMI (or its licensor) any right, title, license or other interest in, to or under any REI Proprietary Intellectual Property (whether by estoppel, implication or otherwise), except as expressly provided in the next sentence. With the exception of the REI Content Management System (REIgnition CMS) and notwithstanding the immediately preceding sentence, REI agrees that upon payment in full, REI hereby grants to Client or SMI (or its licensor) a limited, fully-paid, non-exclusive, non-assignable worldwide license to use, copy, modify and create derivative works of REI Proprietary Intellectual Property which is included within the REI Deliverables, solely for the purpose of using or otherwise exploiting the REI Deliverable as contemplated by the Statement of Work. In no event may Client sell, assign, transfer or otherwise exploit any such REI Deliverable except as specifically provided herein.

4.    **INDEMNIFICATION.** Subcontractor shall indemnify and hold SMI, its officers, employees and agents harmless from any and all claims, liability damages, losses and expenses arising from:

    a.    any personal injury (or death) or damage of any property rising out of or in any way connected with any act or omission by REI in the provision of services under this Agreement;

    b.    any taxes or other payments owned by Subcontractor to any governmental agency as a result of any services provided hereunder, any compensation owed to any employee or subcontractor of Subcontractor for services provided hereunder, or any determination that Subcontractor is not an independent contractor; and

    c.    any claim by a third party that the work or materials provided hereunder infringes a copyright, patent, trade secret or other intellectual property right of such third party.

    d.    any claim by a third party for lost profits, revenue or data.

5. **CONFIDENTIALITY**

5.1     In the course of providing services hereunder, REI and SMI may have access to confidential and proprietary information and materials of SMI or its Clients (Confidential Information). Confidential Information includes and is not limited to, information related to past, present or future research, development or business affairs, any proprietary products, materials or methodologies, or any other information which provides SMI or its Clients with a competitive advantage. Confidential Information shall be used by REI only in conjunction with the provision of services hereunder and shall not be disclosed to any third party. REI shall at all times treat any Confidential Information with the same level of care as they would their own. No rights or licenses under patents, trademarks or copyrights are granted or implied by any disclosure of Confidential Information. Upon SMI's request or completion or termination of this Agreement, REI shall return all Confidential Information to SMI. This Section 5.1 shall survive the expiration or termination of this Agreement.

5.2     In the course of providing services hereunder, REI and SMI may have access to confidential and proprietary information and materials of REI or its Clients (Confidential Information). Confidential Information includes and is not limited to, information related to past, present or future research, development or business affairs, any proprietary products, materials or methodologies, or any other information which provides REI or its Clients with a competitive advantage. Confidential Information shall be used by SMI only in conjunction with the provision of services hereunder and shall not be disclosed to any third party. SMI shall at all times treat any Confidential Information with the same level of care as they would their own. No rights or licenses under patents, trademarks or copyrights are granted or implied by any disclosure of Confidential Information. Upon REI's request or completion or termination of this Agreement, SMI shall return all Confidential Information to REI. This Section 5.2 shall survive the expiration or termination of this Agreement.

6. **TERMINATION.**

6.1     Either party may terminate this Agreement upon thirty (30) days prior written notice to the other party if the other party is in default of any provision of this Agreement and such default is not cured within the thirty (30) day period.

6.2     Upon termination of this Agreement, REI shall cease all work and shall promptly provide SMI, without additional cost to SMI, all work and materials developed by Subcontractor under this Agreement. REI shall also return to SMI all materials and Confidential Information provided to Subcontractor in connection with this Agreement.

7. **NONCOMPETITION AND SOLICITATION.**

7.1     SMI may, in connection with this Agreement, disclose to REI Confidential Information regarding SMI's Clients and the products and services to be provided to such Clients by REI. In consideration of the fees to be paid as per Schedule A, REI agrees not to solicit such Clients directly or indirectly, for any similar products and services during the term of this Agreement and for a period of two (2) years thereafter if and only if REI unilaterally terminates this Agreement. If SMI unilaterally terminates said Agreement, Section 7.1 shall not apply. However, as per Section 16, Sections 3,4,5,6.3, 7.2 and 9 shall survive. If circumstances occur where the parties terminate this Agreement mutually, 7.1 shall not apply, and Section 16 will survive."

7.2     REI further agrees not to solicit or approach for employment, either directly or indirectly, any SMI personnel during the term of this Agreement and for a period of one (1) year thereafter.

8. **PUBLICITY AND TRADEMARKS.** Neither party shall publicize or use the name or trademarks of the other party in any manner, or those of SMI's Clients, without the prior written consent of the other party.

9. **LIMITATION OF LIABILITY.** EXCEPT FOR DAMAGES ARISING FROM ANY NONCOMPLIANCE WITH SECTIONS 2, 3, 4, AND 5 IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR LOSS OF PROFITS, REVENUE, DATA OR USE OR FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, HOWEVER CAUSED, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

10. **EXCLUSIVITY.** REI agrees not to enter into similar subcontractor agreements with the following companies for a period of two (2) years from the date of this Agreement:

> a. CVBtv/220Solutions LLC
> b. Internet Destination Sales System, LLC
> c. New Media Gateway

11. **NOTICES.** Any notice, request, authorization, direction, or other communication under this Agreement shall be given in writing and delivered in person or by certified or first-class United States mail, properly addressed and stamped with the required postage to the intended recipient.

12. **NONWAIVER.** The failure of either party to insist upon or enforce strict conformance by the other party of any provision of this Agreement or to exercise any right under this Agreement shall not be construed as a waiver or relinquishment of such party's right unless made in writing and shall not constitute any subsequent waiver or relinquishment.

13. **INVALID PROVISION.** The invalidity or unenforceability of any provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

14. **CUMULATIVE REMEDIES.** The rights and remedies afforded to either party pursuant to any provision of this Agreement are in addition to and do not in any way limit any other rights or remedies afforded to either party by any other provision of this Agreement or by law. All such rights and remedies are cumulative and may be exercised singularly or concurrently.

15. **SUCCESSORS AND ASSIGNS.** Neither party may assign any rights hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld. Any assignment of rights shall not work as a notification of obligations thereunder without written agreement. Any attempt to assign any rights, duties, or obligations hereunder without the other party's written consent will be void. Notwithstanding the above, either party may assign this Agreement to a surviving entity in connection with any merger, acquisition or consolidation.

16. **SURVIVAL.** Sections 3, 4, 5, 6.3, 7 and 9 shall survive any termination of this Agreement.

17. **ENTIRE AGREEMENT.** This Agreement and its attachment(s) set forth the entire agreement between the parties and supersedes any and all prior or contemporaneous agreements of the parties with respect to the subject matter contained herein. SMI shall not be bound by, and specifically objects to, any term, condition, or other provision inconsistent with or in addition to any provision of this Agreement that is submitted by REI in any correspondence or any other document, unless SMI specifically agrees to such provision in a written instrument signed by an authorized representative of SMI. No change, amendment, or modification of any provision of this Agreement shall be valid unless set forth in a written instrument signed by both parties.

18. **APPLICABLE LAW.** This Agreement shall be bound by the laws of the Commonwealth of Pennsylvania.

**Software Management, Inc**

*[Signature: Jennifer Reichenbach]*

Signature

Jennifer Reichenbach, First Vice President

Print Name & Title

3/7/07

Date

**Ripple Effects Interactive, Inc.**

*[Signature]*

Signature

SHANE PRYAL, VICE PRESIDENT

Print Name & Title

03-07-07

Date

## Exhibit A. Chargeable Rate Table

REI will be responsible for keeping SMI informed of project status via monthly updates to allow for appropriate monthly billing to the Client. Per the terms of SMI's Software Engineering and Support Services Agreements with its Clients, SMI shall issue monthly invoices as work progresses, and payment will be due NET 30 days from invoice date. On receipt of payment from the Client, SMI will then pay REI according to the table below. SMI's hourly rate to the Client is subject to increase.

| SMI Hourly Rate Billed to Client | Hourly rate SMI to pay REI |
| --- | --- |
| US$155.00 | US$140.00 |